LOUIS HAMBERGER. plaintiff in error, *vs.* EASTER, PEGGY, GRIFFIN *et al.*, defendants in error.

(BLECKLEY, Judge, did not preside in this case.)

1. A decree, framed upon a bill for direction by the executor of a will, which does not fix the amount due by such executor, but directs him to pay out the estate when collected, to certain general legatees, after retaining a certain sum in his hands to pay counsel fees and allowances to himself, under the will, and another sum for a specific legatee, and to report his actings and doings thereon, from term to term, is not such a final decree for money as to constitute a lien upon the property of complainant from the date of its rendition in favor of such general legatees.

2. If the entire estate, in lands, be levied upon, and the issue be whether the whole is subject or not subject, and the whole is found subject, under an erroneous charge of the court, which left no option to the jury, but forced them so to find, this court will send the case back for a new trial, though it may be that the facts show that the equity of redemption was certainly subject to the *fi. fa.*, and though the facts also raise certain questions of priority of liens of plaintiffs in *fi. fa.* over the claimant, arising from the assumption that the debt of the plaintiffs was a trust debt, and the claimant's papers on which he based his claim, was only a mortgage, especially if the pleadings, as disclosed in the record, made no such points, and none such appear to have been passed upon by the court below. Whilst all the equities between the parties may be adjudicated in a claim case, and the verdict and judgment may be so moulded as to do justice to all, yet the pleadings must be so framed as that the records of the court shall show harmony between them and such verdict and judgment.

Administrators and executors. Decree. Lien. Equity. Claims. Before Judge BUCHANAN. Muscogee Superior Court. November Term, 1875.

Reported in the opinion.

INGRAM & JOHNSON, for plaintiff in error.

BLANDFORD & GARRARD, for defendants.

JACKSON, Judge.

This was a claim case, wherein Easter and others were the plaintiffs in execution, and Hamberger was the claimant. It arose upon the following state of facts: Owen Thomas died

and left a will, of which he made James K. Redd the executor. Redd, as such executor, filed a bill for direction in Muscogee superior court, in 1871. There were several important and difficult. questions to be settled by the decree for direction to be rendered in pursuance of the prayer of said bill. At the November term, 1873, a decree was rendered, wherein the executor was directed to pay certain specific legacies, to retain a certain amount as compensation for himself, and as attorney's fees, and then to divide the remainder of the estate, when collected, between twenty-six persons; and the executor was directed to report, from time to time, the condition of the estate. At the May term, 1874, the executor reported that he had paid the legatees $10,000 00 in full of all they claimed, and had paid to their counsel, by virtue of an agreement in writing and by their direction, $10,000 00, except about $3,300 00, which was still due, and which he had on hand in cash and assets. At the May term, 1874, an order was obtained that an execution issue for the sum of $1,433 49, being the amount still due M. H. Blandford, Esq., one of their counsel. The execution of course was to issue in the name of the legatees, and which was accordingly issued on the 2d of November, 1874, and levied the same day on a house and lot in Columbus, as the property of Redd, who died shortly thereafter, in the same month. Hamberger claimed this property by virtue of a deed made to him by Redd on the 19th of March, 1874, for the consideration expressed therein of $5,000 00. This deed was immediately recorded. On the same day Hamberger gave to Redd a bond, reciting that he had advanced $3,000 00 to Redd, and if Redd should pay him this $3,000 00, with interest at fifteen per cent. within twelve months, then he would make him a deed back to said lot, and if not paid, then the first deed to be irrevocable; this bond was not recorded. On the trial of the claim case these facts were introduced in evidence, and the court charged the jury that the decree rendered on the said bill for direction in 1873, was such a decree as bound the property of Redd from its rendition; and if such a decree was rendered it was the

duty of the jury to find the property subject to the execution. The jury, of course, found the property subject, and the question is whether this charge of the court was correct.

1. A decree for money binds all the property of the defendant just as a judgment at law does. It operates as a lien upon defendant's property: Code, section 4217. Is the decree in this case a decree for money against Redd so as to operate as a lien upon his property? We think not. In the first place, he is the complainant and not the defendant; in the second place, his was a bill for direction to whom to pay the estate when reduced to money, and not to fix the amount due by him to the estate; in the third place, the decree does not fix any specific sum of money due by him to anybody, unless the payment of the legacy of $2,500 00 be such a fixed sum; in the next place, the decree was not final in ascertaining the amount due by the executor, but as he collected money from time to time and paid out the same, he was to report thereon to the court. When the estate was turned into money, he was to retain a part and pay the balance to these plaintiffs. He thought it would turn out $25,000 in money, and so said in the bill, but it did not, and he afterwards settled at $20,000 00; but the decree fixed no definite sum. The very idea of a lien upon the property of defendant involves in it the certainty of that lien in respect to amount. The reason is that all persons dealing with the defendant in the decree or judgment may know how much his property is involved, what is the amount of the lien upon it, and what they can afford to give for it when they bargain subject to the lien. The policy of the law is against incumbering or tying up property with general liens upon all that a man possesses, without any regard to the amount of the debt for which his property is bound. Construing the sections of the Code upon this subject, such seems to be the plain intent and spirit of the law: Code, section 4215, 4216, 4217. How could an execution for money have issued on this decree? The sum due was to be afterwards ascertained, whereas a *fi. fa.* is for a sum certain. For these reasons we think that the court erred in

charging that this decree, from its date, bound all the property of Redd so as to prevent Hamberger from trading for it thereafter; and inasmuch as Hamberger's title or claim was founded on a transaction in March, 1874, and the decree was rendered in November, 1873, the charge absolutely controlled the case, and the jury were obliged to find the property subject.

2. It was said in the argument, though it does not appear from any pleadings in the record, or any charge of the court, that the point was made on the trial that the property was subject any way, because Hamberger's papers amounted in effect only to a mortgage, and the equity of redemption of the property was subject; that is, that the property was subject to sale under the incumbrance of the mortgage. But the levy was upon the entire property, the issue was joined upon all, and the jury found the whole of it—the entire estate in it—subject, and were obliged to do so under charge of the court. If the verdict and judgment condemning the whole estate under this charge had been allowed by the claimant to stand, he might have been estopped forever from setting up any equities he might have to any part of this estate, or any lien thereon. What is the legal effect of the transaction between Hamberger and Redd, and what title, if any, or what lien, if no title, he obtained, we do not now decide, the pleadings making no such question, and the court below not having adjudicated it.

It was also said that Redd being dead, the debt he owed to the legatees was a trust debt, and in the distribution of his estate it would be held responsible for such a trust debt before it would be required to pay Hamberger's claim. But the pleadings fail also to make this question, and it was not passed upon below by the jury, or the court; besides, Redd had an interest in some partnership property, and the mortgagee, if mortgagee only, might have forced the plaintiff upon that fund. It was also said that Hamberger's transaction with Redd was coupled with a secret trust, and was therefore void. For the same reason, to-wit: because no such point was made

or passed upon by the court below, so far as this record discloses, we decline to review it here.

We know that a claim case is in the nature of an equitable proceeding, and that, at all events, under our judicial system, all equities may be set up and determined as well at law as in equity, and that the verdict and judgment may be so moulded as to do full justice to all the parties; but this court has ruled that the pleadings must be so framed at law as to authorize the verdict and judgment to be so moulded. We simply decide in this case that the court, by its charge that the decree rendered on this bill for direction bound all the property of the complainant in that bill from the date of its rendition, was erroneous, and as it absolutely controlled the verdict of the jury, and constrained them to find *the whole property* subject to the *fi. fa.*, we reverse the judgment, and grant a new trial, leaving the other points made in the argument to be adjudicated on proper pleadings by the court below, and, if necessary, to be reviewed here.

Judgment reversed.